FILED

2026 Jul-31  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION,       } } } | |
|     Plaintiff,     } } | **Case No.: 2:23-cv-01499-MHH** |
| v.      } } | |
| EDMOND V. WATTERS,      } } | |
|     Defendant. | |

## MEMORANDUM OPINION AND ORDER

PNC has moved for a protective order, (Doc. 32), and Mr. Watters contends that PNC does not have standing to bring this action. After a telephone conference, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the Court directed the parties to explain in writing whether there is a genuine dispute of material fact concerning PNC's standing to bring this action. (Doc. 35). The issue has been fully briefed. (Docs. 39, 40, 41). For the reasons set forth below, the Court concludes that, as a matter of law, PNC has standing to sue Mr. Watters, so the Court will enter judgment for PNC on this affirmative defense pursuant to Rule 56. Because the Court may resolve the affirmative defense as a matter of law on the record before it, discovery on the standing issue is not necessary.

\*\*\*

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Rule 56(f) allows a district court, after giving notice and a reasonable time to respond, to grant summary judgment for a nonmovant, grant a summary judgment motion on grounds not raised by a party, or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. Fed. R. Civ. P. 56(f).

When deciding whether to enter summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "A litigant's self-serving statements based on personal knowledge or observation can defeat summary

2

judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of the evidence, the court cannot make credibility determinations; that is the work of a factfinder. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The Rule 56 standard applies to affirmative defenses. *See Burns v. Gadsden State Community College*, 908 F.2d 1512, 1519 (11th Cir. 1990) (reversing summary judgment for a defendant where genuine issues of material fact affecting an affirmative defense precluded summary judgment). A district court may grant summary judgment on an affirmative defense if the court concludes that no genuine issue of material fact exists regarding that defense.

***

On November 3, 2023, PNC sued Mr. Watters. (Doc. 1). PNC alleges that Mr. Watters signed and delivered a promissory note to BBVA USA for the principal amount of $350,000 on October 9, 2019. (Doc. 1, p. 2). The note states that it is "governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the state of Alabama without regard to its conflicts of law provisions." (Doc. 39-2, p. 3). BBVA USA merged into PNC effective October 8,

3

2021.  (Doc. 39-1).  PNC contends that the merger makes it the successor in interest to the promissory note.  (Doc. 1, p. 1).  PNC asserts that Mr. Watters defaulted on the loan by failing to make timely payments and by failing to make full and final payment upon demand by PNC.  (Doc. 1, p. 3).  PNC alleges that Mr. Watters owes it $324,975.41 in total.  (Doc. 1, p. 4).

Due to complications with service and several motions for default judgment, Mr. Watters did not file an answer to the complaint until May 27, 2025.  (Doc. 27). In his answer, he asserts that PNC does not have standing to sue or maintain this action against him because PNC does not have title to his debt.  (Doc. 27).  Mr. Watters contends that PNC cannot establish a chain of title from BBVA USA, the entity identified on the promissory note as the lender, (Doc. 1-1), to PNC.  (Doc. 27 at 2-3).

On November 24, 2025, PNC moved for a protective order after Mr. Watters noticed the deposition of William Demchak, President and CEO of PNC Financial Services Group, Inc.  (Doc. 32).  In his response to the motion for a protective order, Mr. Watters states that "only [Mr.] Demchak can answer [Mr.] Watters'[s] questions on the narrowly tailored standing and capacity to sue topics."  (Doc. 34, p. 3).  Mr. Watters set forth a list of "narrowly tailored" topics for Mr. Demchak's deposition. (Doc. 34, pp. 4-5).  Those topics relate to PNC's merger with BBVA and Mr.

Watters's contention that PNC does not have standing because of the merger. (Doc. 34, pp. 4-5).

\*\*\*

"The standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) (quotation omitted). Plaintiffs have standing if they have suffered an injury that is concrete, particularized, and imminent; a "causal connection between the injury and conduct complained of" exists; and the injury is redressable in court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A non-defaulting holder of a promissory note has Article III standing to sue a defaulting party if the holder alleges economic injury caused by the defaulting party's failure to pay amounts due under the note. *Branch Banking & Tr. Co. v. McDonald*, No. 2:13-CV-000831-KOB, 2013 WL 5719084 at \*4 (N.D. Ala. Oct. 18, 2013) ("BB&T, as holder of the Note, can establish injury in fact through deprivation of the funds due under the Note and, therefore, has standing to bring suit under it.").

Mr. Watters acknowledges that PNC merged with BBVA, but he argues that PNC does not have chain of title to enforce the promissory note at issue because the Stock Purchase Agreement relating to the PNC-BBVA merger did not grant PNC rights to enforce Mr. Watters's note.

The National Banking authorizes PNC to enforce loans that BBVA made before the merger. The statute provides:

> All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests, including appointments, designations, and nominations, and all other rights and interests as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, and receiver, and in every other fiduciary capacity, in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger, subject to the conditions hereinafter provided.

12 U.S.C. § 215a(e). Thus, the merged bank enjoys the combined rights of the individual banks pre-merger. Stated differently, post-merger, BBVA and PNC are legally indistinguishable.

Furthermore, Mr. Watters's note states: "The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns." (Doc. 39-2, p. 3). Mr. Watters argues that because the Note does not expressly allow BBVA to assign the interest without consent, the assignment is invalid. (Doc. 40, pp. 5-6). But, whether BBVA could assign the loan to PNC without consent when the banks were separate entities is irrelevant. PNC acquired BBVA's right to enforce the note by federal law, not by assignment.

6

*See* 12 U.S.C. § 215a(e) ("All rights, franchises, and interests of the individual merging banks… shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer.").  The same can be said for Mr. Watters's arguments regarding the Stock Purchase Agreement.  *See* (Doc. 40, pp. 6-8).  Under federal law, the merger combines the rights of BBVA and PNC, and the language of the Stock Purchase Agreement is immaterial to the standing analysis.

Because Mr. Watters does not contest the validity of the promissory note at issue, and the note states that it inures to the benefit of BBVA's successors and heirs, PNC need show only that the merger took place to demonstrate standing.  *Wells Fargo Bank, N.A v. Tom Roberts Const. Co. Inc.*, 629 Fed. Appx. 877, 880-81 (11th Cir. 2015) (holding that proof of a bank's merger coupled with a guaranty stating that promissory note was "freely assignable" was enough to establish that the merged bank had acquired a loan and the loan's enforcement rights by merger).  PNC has done so; PNC has provided its Certificate of Merger and certification letter as proof that the merger took place.  (Doc. 39-1).  The note's provision that it inures to the benefit of successors and heirs, coupled with the proof of the merger, (Doc. 39-1), is sufficient to show that PNC has standing to bring and maintain this suit as a matter of law.  *See Wells Fargo*, 629 Fed. Appx. at 880-81.  PNC is entitled to summary judgment on Mr. Watters's standing defense.

Because PNC is entitled to summary judgment on the standing issue, Mr. Watters does not need Mr. Demchak's testimony on the issue of standing. Testimony from any non-party, high-ranking corporate officer of PNC related to the merger is unnecessary as all merger information reasonably necessary for the purpose of this suit is publicly available.

Accordingly, the Court enters judgment for PNC on Mr. Watters's standing affirmative defenses.  The Court grants PNC's motion for a protective order; Mr. Watters may not depose Mr. Demchak, (Doc. 32).  Within 14 days of the entry of this order, the parties shall meet and confer and file a joint status report, including a proposed scheduling order for the completion of discovery.  The Clerk of Court shall please TERM Doc. 32.

**DONE** and **ORDERED** this July 31, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

8